IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHNNY R. LEWIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:16-cv-2477-M-BN |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Johnny R. Lewis's *pro se* action under the Federal Tort Claims Act
("FTCA") has been referred to the undersigned United States magistrate judge for
pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from
Chief Judge Barbara M. G. Lynn.

The United States moves for summary judgment. *See* Dkt. Nos. 27, 28, & 29.
Lewis filed a response opposing the motion. *See* Dkt. No. 31. And the United States
filed a reply brief. *See* Dkt. No. 32.

The undersigned issues the following findings of fact, conclusions of law, and
recommendation that the Court should grant the United States's motion for summary
judgment and dismiss this action with prejudice.

**Applicable Background**

Through an unverified *pro se* complaint [Dkt. No. 3], Lewis, a disabled Air Force
veteran, *see* Dkt. No. 29-1 at 2, alleges that the Dallas VA Medical Center (the "VA")
acted "negligently by submitting [his] drug screening without a signed pain

management contract, and without [his] consent, as required by VA policy," Dkt. No.

3 at 3. Lewis more fully explains that, on September 23, 2015, he

> received a phone call from his primary care clinic nurse at [the VA]. The
> nurse stated that [Lewis] needed to come in and sign a pain management
> contract because she could not locate one in the [his] medical file. The
> nurse informed [Lewis] that the contract is necessary for all patients that
> are currently prescribed the pain medication Hydrocodone. The nurse
> also informed [him] that past drug screens had been conducted on [him.
> Lewis] informed the nurse that he had been on the pain medication since
> 2010 and no one had ever initiated nor told [him] that a pain
> management contract was required. Additionally, [Lewis] had never
> signed a contract, nor consented to drug screening. VA policy requires
> "that all patients receiving Opioid treatment must consent to and sign a
> pain management contract, and that providers may order urine or blood
> drug tests with the patients consent (separate from the contract
> consent)."

*Id.* at 2. Lewis seeks $200,000 in damages. *See id.* at 4.

In his administrative claim (the SF-95), submitted in January of 2016, Lewis

alleged

> [p]ersonal injury resulting in emotional distress caused by illegal drug
> screens performed on [him] on multiple [occasions] without the [his]
> knowledge and consent as required by VA. Violations of [his] civil and
> privacy rights. Primary care provider, and medical care provider
> malpractice.

Dkt. No. 29-1 at 48. The VA denied this tort claim in March of 2016. *See id.* at 52-53.

And it appears that, by filing this action and raising only negligence, Lewis has

abandoned his civil rights and privacy claims.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the

movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts

showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)). The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted).

"Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). Rather, the non-moving party must "set forth specific

facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he

must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

The verified complaint and sworn interrogatory answers of a *pro se* litigant can be considered as summary judgment evidence to the extent that such pleadings comport with the requirements of Rule 56(e). *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit.").

## Analysis

Lewis's medical-based negligence suit is authorized by the FTCA, which allows "civil actions for damages against the United States for personal injury or death caused by the negligence of a government employee under circumstances in which a private person would be liable under the law of the state in which the negligent act or omission occurred." *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008) (citing 28 U.S.C.

§§ 1346(b)(1), 2674). Texas law therefore "controls liability." *Id.* (citing *Ayers v. United States*, 750 F.2d 449, 452 n.1 (5th Cir. 1985)).

> Under Texas law, in a medical malpractice action, the plaintiff bears the burden of proving (1) the physician's duty to act according to an applicable standard of care; (2) a breach of that standard of care; (3) injury; and (4) causation. *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003). The plaintiff must establish the standard of care as a threshold issue before the factfinder may consider whether the defendant breached that standard of care to the extent it constituted negligence. *Id.* "Unless the mode or form of treatment is a matter of common knowledge or is within the experience of the layman, expert testimony will be required" to meet the plaintiff's burden of proof. *Hood v. Phillips*, 554 S.W.2d 160, 165-66 (Tex. 1977).

*Id.*

The United States was negligent here, according to Lewis, because the VA failed to follow its own policies. While Lewis provides few details about those policies and their relationship to his treatment at the VA, through uncontroverted summary-judgment evidence – the sworn declaration of Anwar Haque, M.D., the Acting Chief of Staff for Ambulatory Care for the North Texas VA Health Care System – the United States explains that,

> [a]ccording to Plaintiff, he had been on pain medication Hydrocodone since 2010 but was never presented with a contract nor consented to drug screening as required by VA policy, and it was not until September 23, 2015 that he was notified by a primary care clinic nurse that he needed to come in and sign a pain management contract.
> Review of Plaintiff's VA medical record shows that he is a veteran of the U.S. Air Force who served from January 1992 – April 1993.
> The Plaintiff's VA medical record shows that from 2010 through September 23, 2015, he had six drug screens ordered by four different providers: John Lonergan, M.D. (January 20, 2010); Michael Johnson, P.A. (October 12, 2010); Muhammad Sattar, M.D.; (January 30, 2012 and April 30, 2012); and Chery Michael, N.P. (June 21, 2013 and October 16, 2014).

The notes by these physicians do not document the reasoning for the urine drug screens or that they had any discussion with Plaintiff about the urine drug screens.

As relevant to this lawsuit, on September 21, 2015, Plaintiff called his primary care clinic and requested a refill for his Hydrocodone prescription, and Ramesh Chandran, M.D. noted that he had not had a urine drug screen in almost one year and the last several urine drug screens were negative for opiates. Thus, Dr. Chandran asked his nurse to arrange for Plaintiff to come in for a urine drug screen before ordering a refill of the prescription.

On September 23, 2015, Margaret Jackson, RN called Plaintiff and instructed him that he needed a urine drug screen to be done before the doctor would refill his Hydrocodone, a prescription opioid medication, and that he needed to sign an opioid pain care agreement.

On September 24, 2015, Plaintiff came into the hospital for his urine drug screen and signed the informed consent form for long-term opioid therapy for pain.

For the period 11/07/2014 to ... 05/10/2016, Plaintiff's prescription for Hydrocodone has been filled every 28-30 days which suggests Plaintiff has been taking this medication as prescribed.

There are two applicable policies during the period in question.

From October 28, 2009 to October 31, 2014, VHA Directive 2009-053, *Pain Management*, provided policy and implementation procedures for pain management standards of care for VA providers.

From May 6, 2014 to present, VHA Directive 1005, *Informed Consent for Long-Term Opioid Therapy for Pain*, establishes policy regarding patient education and informed consent for long-term opioid therapy for pain and policy regarding opioid pain care agreements (OPCA).

While the completion of a written opioid pain care agreement was strongly encouraged in the first directive, it was not until the May 6, 2014 directive was published that VA providers were required by internal policy to obtain signature consent from the patient for OPCA purposes.

Furthermore, for patients who are already receiving long-term opioids for pain as of May 6, 2014 like Plaintiff, VHA Directive 1005 provides that VHA prescribers had until May 6, 2015 to complete the patient education and informed consent process.

To the best of my knowledge, VA North Texas Health Care System is compliant with the requirements set forth in VHA Directive 1005.

This VA medical center also has a local policy, VA North Texas Health Care System Memorandum No. 1112A-06, dated February 26, 2014, Chronic Opioid Use that is relevant to this suit.

-8-

Dkt. No. 29-1 at 4-6.

To begin, to the extent that Lewis's FTCA claim is purely based on a common law negligence theory, "[n]egligence claims require a duty, a breach of that duty, causation, and damages" – "[t]he analysis of this issue is made more difficult because [Lewis] never specifies the nature of the harm he suffered." *Walding v. United States*, No. SA-08-CA-124-XR, 2009 WL 902423, at *15 (W.D. Tex. Mar. 31, 2009). Thus, because Lewis fails to establish an essential element of a negligence claim – here, that he was harmed as a result of a violation of the VA opioid-treatment policies outlined above (assuming there was a violation of those policies) – the Court should grant the United States summary judgment as any purely common law negligence claim asserted by Lewis.

Moving on to a medical malpractice claim based on the alleged violations, establishing a violation of the applicable standard of care requires more than showing that the VA violated its own policies. *See Quijano*, 325 F.3d at 568 (observing that, "[i]n Texas, a hospital's internal policies and bylaws may be evidence of the standard of care, but hospital rules alone do not determine the governing standard of care" because, for example, "[a] hospital might maintain a higher standard of care than the prevailing community standard," and directing the district court, on remand, to "consider whether the expert testimony offered by the parties established a community standard of care and whether the actions of the Defendant's agents and employees breached that standard of care" (citations omitted)); *see also Mills v. Angel*, 995 S.W.2d 262, 268 (Tex. App. – Texarkana 1999, no pet.) ("In determining the standard of care,

we look to not only what an ordinary hospital would do under the circumstances, but we may also look to the hospital's internal policies and bylaws. However, hospital rules alone do not reflect the standard of care." (footnotes omitted)); *Pierson v. United States*, 605 F. App'x 293, 295 (5th Cir. 2015) (per curiam) ("[T]o the extent Pierson contends the Bureau of Prisons violated its own policy regarding observation rooms, expert testimony was still required because a health care facility's internal policies and procedures do not alone determine the governing standard of care." (citing *Quijano*, 325 F.3d at 568; *Mills*, 995 S.W.2d at 268)).

Lewis therefore bears the burden to establish the applicable standard of care with expert testimony.

And, even where a plaintiff is proceeding *pro se*, if, like here, expert testimony is necessary to establish the standard of care, a plaintiff's failure to properly designate or obtain "an expert to testify on his behalf" is a proper basis to grant summary judgment for a defendant as to the claim at issue. *Hannah*, 523 F.3d at 602; *see Fujita v. United States*, 416 F. App'x 400, 403 (5th Cir. 2011) ("The district court correctly concluded that the government is entitled to summary judgment if Fujita cannot designate an expert witness to establish that the government breached the standard of care, an essential element of the medical-malpractice claim." (footnote omitted)); *Borden v. United States*, 537 F. App'x 570, 575 (5th Cir. 2013) (per curiam) ("[B]ecause Borden failed to designate a medical expert to establish the threshold standard-of-care issue, the court properly granted summary judgment for the Government on her medical-malpractice claim."); *see also Honey-Love v. United States*, 664 F. App'x 358,

363 (5th Cir. 2016) (per curiam) ("Here, the applicable standard of care is one involving doctors treating a spinal cord injury patient within a specialized SCI unit. This is not a matter of common knowledge, therefore expert testimony is required to demonstrate the elements of negligence and causation. Honey-Love did not sufficiently demonstrate Dr. Davey qualified as an expert as to this applicable standard of care. With Dr. Davey's testimony excluded under Federal Rule of Civil Procedure 26(a)(2)(B) and Federal Rule of Evidence 702, Honey-Love did not have the requisite expert evidence to support her Texas medical negligence claim against either the four VAMC doctors nor Drs. Dichoso and Rothenberg. Therefore, these defendants were entitled to summary judgment as a matter of law."); *cf.* Dkt. No. 19 (Initial Scheduling Order), ¶ 1 (at 2) ("Plaintiff is responsible for conducting discovery to obtain the evidence that he needs to prove his case. This responsibility generally includes obtaining an expert witness to the extent that expert evidence is required to establish a claim or defense." (citing *Hannah*, 523 F.3d at 600-01)).

Because Lewis fails to proffer the required expert testimony, he has neither established the applicable standard of care nor a breach of that standard – both essential elements of a medical malpractice claim – which means that the United States is entitled to summary judgment on that claim.

### Recommendation

The Court should grant the United States's motion for summary judgment [Dkt. No. 27] and dismiss this action with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all

parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 30, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE